## Micheltree *et al. versus* Sweezy.

1. Shortly before the Bounty Act of March 25th 1864, a meeting of citizens of a township at which the school directors were present, agreed that money should be borrowed for filling the township's quota. It was "understood and agreed" with the directors, that if the law should be passed, they would levy a tax to pay the borrowed money. The money was borrowed. After the passage of the Act of 1864, the directors adopted a resolution to levy a tax to repay it, and a warrant was issued for its collection. In 1866, an act was passed legalizing all the acts of the directors and authorizing the collection of the tax, &c. This justified the levying and collecting the tax.

2. The resolution of the directors was an official recognition of the money raised to fill the quota, needing only a legal sanction to make it binding on the citizens, which the Act of 1866 was.

3. Tyson *v.* Halifax, 1 P. F. Smith 9, distinguished. Grim *v.* Weissenberg, 7 P. F. Smith 433, Weister *v.* Hade, 2 Id. 474, adopted.

November — 1871. Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Mercer county*: No. 221, to October and November Term 1871.

Matthias Sweezy, on the 4th of June 1866, brought an action of trespass *d. b. a.* against S. T. Micheltree and others.

The cause of action was the seizure and sale of the plaintiff's goods by Micheltree, as collector, under a warrant from the School Directors of Shenango township for taxes to pay money borrowed to pay bounties to volunteers.

The plaintiff gave in evidence the seizure and sale of a horse belonging to him, and worth from $175 to $200.

The defendants gave in evidence a resolution of the board of school directors, adopted July 1st 1864: "To assess taxes to re-imburse all moneys contributed to raise bounties for procuring volunteers actually mustered into the service of the United States, amounting to $6427.60." Also the warrant of collection; the amount of plaintiff's tax being $48.55.

"They then proposed to prove that shortly prior to the 25th of March 1864, the date of the passage of the General Bounty Act of that year, a meeting of the citizens of Shenango township was held, at which it was resolved that a fund should be raised by borrowing money, for the purpose of putting the quota of said township into the military service of the United States, under the call of the President of the United States. That the school directors of said township were present at said meeting, and it was understood and agreed with the said school directors that if the law which was then pending in the legislature should pass, that they would levy and collect a tax to pay the money so borrowed. That in pursuance of said resolution, understanding and agreement, the sum of $6427.60 was borrowed for that purpose, being the same money for the payment of which the tax was afterward levied by said school directors."

[Micheltree v. Sweezy.]

The offer was rejected by the court, on the objection of the plaintiff, and a bill of exceptions sealed.

An Act of Assembly was passed April 4th 1866 (Pamph. L. 484), viz:—

"The tax laid by the school directors of Shenango township, in the county of Mercer, on the 1st day of July 1864, for the payment of money which was borrowed by said township and paid to volunteers who entered the military service of the United States and were credited to the said township, and all proceedings had in the collection of the same are hereby confirmed, legalized and made valid, and the collector of the said tax be, and he is hereby authorized and empowered to collect he balance of the same in the manner now authorized by law."

The verdict was for the plaintiff for $175.56.

The defendants took a writ of error, and assigned the rejection of their offer for evidence.

*J. Pearson* and *J. H. Robinson*, for plaintiffs in error, cited Act of March 25th 1864 (Pamph. L. 85), Act of 1866, *supra*: Grim *v.* Weissenberg Sch. Dist., 7 P. F. Smith 433; W. Donegal *v.* Oldweiler, 5 Id. 257; Speer *v.* Blairsville, 14 Wright 150; Weister *v.* Hade, 2 P. F. Smith 474.

*Griffith & Mason*, for defendant in error, cited the same acts: Tyson *v.* Halifax, 1 P. F. Smith 9; Meek *v.* Bayard, 3 Id. 217; West Donegal *v.* Oldweiler, *supra*.

The opinion of the court was delivered, January 9th 1872, by

AGNEW, J.—The defendants in the court below proposed to prove that shortly before the passage of the bounty law of 25th March 1864, it was resolved at a meeting of the citizens of Shenango township to raise a fund by borrowing money, to put in the quota of the township into the military service under the call of the President, and that the school directors of the township were present and agreed, if the law should pass, they would levy a tax to repay the money borrowed. The offer was rejected by the court. It is objected that the acts of the directors at the meeting were unofficial, not being done in their organized capacity, and therefore that the case does not fall within the provisions of the Act of 25th March 1864, and the case of West Donegal Township *v.* Oldweiler, 5 P. F. Smith 259, is referred to as an authority. But it is unnecessary to decide whether the Act of 25th March 1864 will embrace the case or not; the Act of 4th April 1866 being clearly adequate to cover it.

On the 1st July 1864, the school directors in their official and organized capacity resolved, in express terms, to reimburse all moneys contributed to raise bounties for procuring volunteers actually mustered into the service of the United States, amount-

[Micheltree *v.* Sweezy.]

ing to $6427.60. This was a clear and direct official recognition that the money was raised for the purpose of filling the quota of the township, and all that it needed was a legal sanction to make it operative and binding on the citizens of the township. This was furnished by the Act of 4th April 1866, enacting that the tax laid by the school directors of Shenango township in the county of Mercer, on the 1st day of July 1864, for the payment of money which was borrowed by said township and paid to volunteers who entered the military service of the United States, and were credited to the said township, and all proceedings had in the collection of the same are hereby confirmed, legalized and made valid, and that the collector of the said tax be and he is hereby authorized and empowered to collect the balance of the same in the manner now authorized by law. This act of ratification recited and acted directly upon the resolution of July 1st 1864, and all that remained was to show that the fund in question, raised to fill the quota of the township, was the same referred to in the resolution of July 1st 1864, and that it was in good faith raised by and with the understanding and agreement of the directors that it should be refunded by taxes laid and collected for the purpose. This it was the very purpose of the rejected offer to do, in order to show that the money was really advanced on the faith and credit of the township, and thus created an obligation to refund which it was the purpose of the legislature to validate. The case is not ruled by Tyson *v.* School Directors of Halifax, 1 P. F. Smith 9, which was where money had been paid by a bounty association voluntarily and in their own relief; but it is ruled by Weister *v.* Hade, 2 P. F. Smith 474, and Grim *v.* Weissenberg School District, 7 P. F. Smith 433.

Judgment reversed, and a *venire facias de novo* awarded.

# CASES

IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

EASTERN DISTRICT—PHILADELPHIA, 1872.